[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14283
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 4, 2006
THOMAS K. KAHN
CLERK

BIA No. A79-443-425

SHKELQIM HOXHA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 4, 2006)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Shkelqim Hoxha, a native and citizen of Albania, petitions this Court to review the final order of the Board of Immigration Appeals ("BIA"), which

affirmed the decision of the immigration judge ("IJ") denying Hoxha's applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the United States Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). On appeal, Hoxha argues that the IJ erred by denying his petition for withholding of removal, under the INA, after finding that he did not demonstrate past persecution or a well-founded fear of future persecution based on his association with the Democratic Party and former Democratic Party leader, Azem Hajdari.[1] After careful review, we deny the petition for review.

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, [this Court] review[s] the IJ's decision as well." Id. Here, the BIA expressly adopted the IJ's reasoning and briefly articulated its reasons for doing so. Thus, we review the decisions of both the IJ and the BIA.

---

[1] Because we find that Hoxha has not established a case for asylum, we do not consider whether he satisfied the higher standard for withholding of removal under the INA. See Forgue v. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005); Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001). As for his application for CAT relief, we lack jurisdiction to review his claim because he did not appeal the IJ's decision on CAT relief to the BIA. See 8 U.S.C. § 1252(d)(1) (requiring an applicant to exhaust all administrative remedies before judicial review is appropriate); see also Sundar v. I.N.S., 328 F.3d 1320, 1325 (11th Cir. 2003) (noting that many courts have held that "where the claim is within the purview of the BIA which can provide a remedy, the exhaustion requirement applies with full force." (citations omitted)).

To the extent that the decisions of the BIA or IJ were based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). Their factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's [or IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). We "cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below." Id. at 1278. Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."). Likewise, a credibility determination is reviewed under the substantial evidence test, and we "may not substitute its judgment for that of the BIA with respect to credibility findings." D-Muhumed, 388 F.3d at 818.[2]

---

[2] The REAL ID Act of 2005 amended the law regarding credibility determinations by adding INA §§ 208(b)(3)(B)(iii) , 1229a(c)(4)(C). Section 101(a)(3) and (d), Pub. L. No. 109-13, 119 Stat. 321, 303, 304-305. The Act states, however, that these provisions "shall apply to applications for asylum, withholding, or other relief from removal made on or after" the date of enactment of the act, May 11, 2005. Pub. L. No. 109-13, 119 Stat. at 305. Therefore, because

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to his home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that his or her statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 378 F.3d 1260, 1264 (11th Cir. 2004) (citation and internal quotation marks omitted). Put another way, "[m]ere harassment does not amount to persecution." Id. (citation omitted). An asylum applicant may not show

Hoxha's application for asylum was filed before May 11, 2005, these provisions do not apply in this case.

4

merely that he has a political opinion, but must show that he was persecuted because of that opinion. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483 (1992).

If the alien establishes past persecution, it is presumed that his life or freedom would be threatened upon return to the country of removal unless the government shows by a preponderance that the country's conditions have changed such that the applicant's life or freedom would no longer be threatened or that the alien could relocate within the country and it would be reasonable to expect him to do so. See 8 C.F.R. §§ 208.13(b), 208.16(b). An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a future threat to his life or freedom on a protected ground in his country. 8 C.F.R. §§ 208.13(b)(2), 208.16(b)(2).

To establish a "well-founded fear" of persecution, "an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable." Najjar, 257 F.3d at 1289. The petitioner's well-founded fear of persecution must be on account of, or because of, one of the statutorily listed factors. See Elias-Zacarias, 502 U.S. at 483. To establish the necessary causal connection, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutorily listed factor. Sepulveda, 401 F.3d at 1231 (quotation omitted).

5

Hoxha argues that the IJ and the BIA mischaracterized his testimony about Albania's National Intelligence Service, or "SHIK" officers, and did not accord adequate weight to Albania's poor human rights record and political tensions with Democratic Party members there. He also asserts that the IJ erred by making an adverse credibility finding, to the extent the IJ noted inconsistencies in his testimony about minor details such as specific dates and failed to enumerate the specific inconsistencies in his testimony.[3]

Here, substantial evidence supports the IJ's and the BIA's finding that Hoxha was not eligible for asylum based solely on his testimony. As the IJ noted, Hoxha (1) failed to testify at all about an incident in which the police allegedly hijacked Hoxha and his brother, and put a gun in Hoxha's mouth; (2) confused dates of pertinent events; (3) misstated the year of the incident that took place in Skroda; (4) could not remember the name of the doctor who treated him and his brother after they allegedly were beaten on May 5, 2001, despite the fact that he provided a letter from the doctor; and (5) testified that his brother's whereabouts were unknown for over four months, but wrote in his asylum application that his brother was living in New York. See Dalide v. U.S. Att'y Gen., 387 F.3d 1335,

---

[3]As for Hoxha's argument that inconsistencies in his testimony were likely the result of translation errors, before the IJ he explicitly stated that he was not going to challenge the interpreter's accuracy. Accordingly, we decline to consider this argument as it was waived.

1343 (11th Cir. 2004) (inconsistencies between applicant's testimony and other record evidence supports adverse credibility finding).

Although uncorroborated but credible testimony may be sufficient to sustain an applicant's burden of proving eligibility for asylum, "[t]he weaker an applicant's testimony, . . . the greater the need for corroborative evidence." Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (citation omitted); see also Dalide v. U.S. Attorney Gen., 387 F.3d 1335, 1343 (11th Cir. 2004) (affirming the BIA's adverse credibility determination, which was based upon its finding that the applicant's testimony conflicted with his answers to interrogatories, affidavit, deposition, and other documentary evidence). Given the inconsistencies in Hoxha's testimony,[4] both the IJ and the BIA looked to Hoxha's corroborative evidence, which included: (1) a vague letter about Hoxha's service for the DP, which made no mention of his unofficial, volunteer bodyguard position for Hajdari; and (2) a letter from his parents, which made no mention of the incident in which Brisku officers beat him in front of his mother. See Yang, 418 F.3d at 1201 (holding that even where there is no explicit adverse credibility finding, an applicant's weak testimony will underscore the need for corroborative evidence).

---

[4]We are unpersuaded by Hoxha's characterization of these inconsistencies as minor in nature. The IJ found, and the BIA agreed, irrespective of the nature or degree of the inconsistencies, Hoxha testified inconsistently on numerous important incidents, upon which his asylum application depended, including one incident in which he claimed a gun was placed in his mouth.

7

The IJ found these items insufficient to satisfy Hoxha's burden to present the requisite evidence to corroborate his story, which the IJ found, in part, not credible.

Simply put, based on our own review, while Hoxha may subjectively fear future persecution, the evidence in the record does not <u>compel</u> the conclusion that he will be singled out for his membership based on a statutory listed factor. <u>See</u> <u>Sepulveda</u>, 401 F.3d at 1231; <u>see also</u> <u>Adefemi</u>, 385 F.3d at 1027 (noting "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . ."). Therefore, the IJ's decision to deny asylum, and the BIA's affirmance of that decision, is supported by substantial evidence and we must deny his petition.

**PETITION DENIED.**